IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALONZA MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-29-GMB |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alonza Marshall applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act on October 25, 2012, alleging a disability date in both claims of October 31, 2011. R. 20, 149, 251 & 253. The application was denied at the lower levels of determination and after a hearing by an administrative law judge ("ALJ"). R. 37–65, 146–167 & 174–84. Plaintiff requested review, and the Appeals Council vacated the decision and remanded for further proceedings. R. 168–70. The ALJ held an additional hearing, and on August 31, 2016, the ALJ issued a new decision denying Plaintiff's applications. R. 17–36 & 66–111. Plaintiff requested review of the ALJ's decision, but the Appeals Council denied the request. R. 1–6. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). R. 1–6. Judicial

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, and for the reasons that follow, the court concludes that the Commissioner's decision is to be AFFIRMED.

## I. NATURE OF THE CASE

Marshall seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

This court's review of the Commissioner's decision is a limited one. The sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this court must affirm the Commissioner's decision if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The court also will reverse a Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a) & 1382c(a)(3)(A)–(C). However, despite the fact that they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical, so claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a) & 416.905(a). A person is entitled to disability benefits when the person is unable to engage

> in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) & 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520 & 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. The RFC is what the claimant still is able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant

5

can perform. *Id*. at 1239. To do this, the ALJ either uses the Medical Vocational Guidelines (the "grids") or receives testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor independently may limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Marshall was 50 years old at the time he filed his disability application and 54 years old at the time of the ALJ's decision. R. 17 & 112. Marshall did not engage in substantial employment during the period of disability at issue. R. 22. The ALJ found that Marshall had the RFC to perform a full range of medium work, but that he was not capable of performing his past relevant work as a materials handler. R. 26 & 29. The ALJ found that a significant number of jobs existed in the national economy that Marshall could perform given his age, education, and RFC. R. 30.

The ALJ found Marshall to have the following severe combination of impairments: "acquired immunodeficiency syndrome (AIDS), excellent control with medication compliance, recurring dermatitis possibly secondary to human immunodeficiency virus (HIV); history of pneumonia and/or pulmonary edema with associated pleural effusions; history of hypertension; and history of acute pancreatitis in the setting of alcohol abuse (20 CFR 404.1520(c) and 416.920(c))." R. 22. The ALJ found that Marshall's alleged seizure condition was not a medically determinable impairment. R. 24. In the first

unfavorable decision of July 21, 2014, the ALJ found Marshall's alleged seizure condition was not a medically determinable impairment. R. 24. Also, in that decision, the ALJ found Marshall to have the following severe combination of impairments: "human immunodeficiency virus (HIV), well controlled with medication compliance; depressive disorder, not otherwise specified, stable with medication compliance; and antisocial personality disorder (20 CFR 404.1520(c) and 416.920(c))."

## V. MEDICAL HISTORY

Medical records from the UAB Outpatient Clinic dated October 11, 2010 and July 27, 2011 reflected that Marshall's HIV was "well controlled," his depression was "stable—continue Remeron," and that he had a recent relapse with "ETOH abuse." R. 351 & 380. Medical records from Limestone Correctional Facility dated July 17, 2011 through February 22, 2012 also confirmed that Marshall had a history of drug abuse, was HIV positive, was treated several times for a skin rash, and took Remeron. R. 369, 395, 410 & 428. Following his release from prison, medical records from Baptist Health during December 2012 indicated that he was hospitalized in ICU for treatment of streptococcus pneumoniae, which included diagnoses of HIV and herpes labialis. R. 505–63.

Dr. Prashanth Bhat of Montgomery AIDS Outreach provided medical treatment to Marshall more than a dozen times from January 1, 2013 to February 10, 2016. R. 570–74, 577–86, 591–608, 630, 662, 684 & 705. Dr. Bhat first saw Plaintiff for an initial visit on January 17, 2013 following his discharge from Baptist hospital for pneumonia. During this visit, Plaintiff admitted regular tobacco use, confirmed substance abuse in the past, but reported no current drug use. R. 571. Dr. Bhat noted a "normal" mental status exam, and further noted Plaintiff's mood was "depressed." He diagnosed "Chronic major

7

depression—apply for Remeron PAP" and "Acquired immunodeficiency syndrome (AIDS)[.] Excellent control with a low CD4 per Baptist records from last month. Continue Atripla. Continue Bactrim DS OIP. Apply for ADAP." R. 573.

Another AIDS Outreach examination in late 2012 noted Plaintiff had "No anxiety. Depression. No sleep disturbances." R. 579. In early 2013, he was "Alert [and] oriented to time, place, and person. Well developed. In no acute distress." R. 580. Furthermore, Plaintiff reported "[n]o memory lapses or loss, no difficulty writing, not feeling nervous, and no anxiety. Depression is a chronic condition. No sleep complaints and a desire to continue living." He also reported "fair mental/emotional health" and "good satisfaction with life in general." R. 582. The examining doctor noted that Marshall was "[w]ell appearing . . . no disorientation to person, not to place, not to time, not to date, and not to situation . . . insight was intact, no paranoid ideations, and no suicidal tendencies." R. 582.

On February 15, 2013, Dr. Bhat saw Plaintiff for another routine visit and he noted that Plaintiff was "[d]oing well. No complaints." R. 651. He also noted Plaintiff's mental exam was "normal" and his mood was "Euthymic." R. 653. He noted "[c]hronic major depression Remeron PAP pending. Better." R. 657. Dr. Bhat again saw Plaintiff on February 25, 2013 for a routine visit and noted that he reported no drug or alcohol use. R. 596. Dr. Bhat also reported Plaintiff appeared "[a]lert. Oriented to time, place and person. Well developed. In no acute distress." He further reported a "normal" mental status exam and that Plaintiff's mood was "Euthymic." R. 598. He further noted "Chronic major depression Remeron PAP pending. Better." R. 602.

Dr. Bhat also saw Plaintiff on April 29, 2013 for a routine visit and noted that Plaintiff was "[d]oing well except that he is worried and tensed about the disability

8

process." He further noted "[d]epression—On Remeron," but no alcohol or drug use. R. 603. He also observed that Plaintiff's "[p]sychosocial support is insufficient," and Plaintiff has "[n]o anxiety, [but has] Depression. No sleep disturbances." Plaintiff was "[a]lert. Oriented to time, place, and person. Well developed. In no acute distress" with a "normal" mental status exam. Again, Plaintiff's mood was "Euthymic." R. 604–05. Dr. Bhat further noted "Chronic major depression Stable with Remeron." R. 607.

Dr. Bhat saw Plaintiff again on June 3, 2013 for a routine follow-up with "no complaints." R. 640. He further noted no alcohol or drug use; "[n]o anxiety, no depression, and no sleep disturbances"; and that Plaintiff was "alert" and "oriented to time, place, and person. Well developed. In no acute distress." R. 641–42. He also noted that a mental status exam was "normal" and that Plaintiff's mood was "Euthymic." R. 643. He further noted "Chronic major depression Excellent on Remeron." R. 645. Dr. Bhat also saw Plaintiff on July 9, 2013 for a routine visit and noted no current alcohol or drug use and "[n]o anxiety, no depression, and no sleep disturbances." R. 634–35. Again, Plaintiff was "alert" and "oriented to time, place, and person. Well developed. In no acute distress." His mental status exam was "normal." R. 636–37. Finally, he noted "Chronic major depression[.] Continue Remeron. Better." R. 639.

Dr. Bhat again saw Plaintiff on October 8, 2013 for a routine visit, when Plaintiff reported "[n]o complaints. Doing well." Dr. Bhat noted "Depression—on Remeron." He also reported "[n]o anxiety, no depression, and no sleep disturbances" and that Plaintiff's general appearance was "[a]lert. Oriented to time, place, and person. Well developed. In no acute distress." He also noted Plaintiff's mental status was "normal" and his mood was

9

"Euthymic." R. 630–31. Again, Dr. Bhat noted "[c]hronic major depression Stable. Continue Remeron." R. 633.

Dr. Bhat saw Plaintiff on August 4, 2014 for a routine visit where Plaintiff reported "[d]oing well except the stress. His disability claims were denied. He has also stopped Remeron since his program stopped." R. 696. He further noted "[n]o anxiety, no depression, and no sleep disturbances." R 697. Dr. Bhat noted that Plaintiff was "[o]riented to time, place, and person," his speech and mental status exam were "normal," and his mood was "Euthymic." On May 7, 2014, Dr. Bhat saw Plaintiff again for management of his HIV and noted Plaintiff reported that he was "[d]oing well except that he was short of breath and lost consciousness(?)" the evening before, but that he was "evaluated by the EMTs and was told everything was OK." R. 701. Dr. Bhat further noted "[a]nxiety and depression. No sleep disturbances." R. 702. He also noted that Plaintiff was "[o]riented to time, place, and person," his speech and a mental status exam were "normal," and his mood was "Euthymic." R. 703.

On January 8, 2015, Dr. Bhat saw Plaintiff for a routine visit. He noted that Plaintiff was "[d]oing well. No complaints." R. 692. He further reported "[n]o anxiety, no depression, and no sleep disturbances." R. 693. He also noted that Plaintiff was "[o]riented to time, place, and person," and his speech and a mental status exam were "normal" and his mood was "Euthymic." R. 693. He further noted "Chronic major depression Stable on Remeron. Monitor." And he observed "(AIDS) Continue ART." On February 19, 2015, Dr. Bhat saw Plaintiff for complaints of a rash around his mouth and as a routine follow-up from Elmore County Detention Facility where Plaintiff explained that he was locked up for old fines, but would get out in about two months.

10

R. 689. Dr. Bhat noted that Plaintiff was "[o]riented to time, place, and person," his speech and a mental status exam were "normal," and his mood was "Dysthemic Empty." R. 691. Dr. Bhat further noted "[e]xcellent control" with AIDS treatment and "Chronic major depression Stable on Remeron." R. 691.

On October 10, 2015, Plaintiff was treated at the emergency room for abdominal pain with rectal bleed, where it was noted that he had HIV and had been drinking all day. R. 667. A brain scan without contrast was normal. R. 672. On December 4, 2015, Plaintiff again was treated at the emergency room for back pain. R. 674. On February 10, 2016, Dr. Bhat saw Plaintiff for complaints of back pain and weight loss. R. 684. He noted that Plaintiff was oriented to time, place and person, but "[s]peech is incoherent. Smells of alcohol. Admits that he took to drinking this morning since he was stressed." He further noted that Plaintiff's mood was "dysthymic" and "frustrated," but his mental status exam was "normal." R. 686.

On May 7, 2014, Dr. Bhat completed a Mental Capacity Assessment on Plaintiff. R. 664–66. He noted that Plaintiff had moderate limitations with respect to his ability to understand and remember detailed instructions, had moderate to marked limitations in his sustained concentration and persistence, had mild to marked limitations in his social interaction, and had mild to marked limitations in his ability to adapt. R. 664–66.

On January 22, 2013, Dr. W.G. Brantley performed a mental health examination of Plaintiff. R. 588–89. He noted that Plaintiff was HIV positive and that he took Remeron for depression, which reportedly "helps [him] do things more and helps [him] remember things better." R. 588. However, Dr. Brantley reported that "[u]nfortunately this claimant did present with malingering today." R. 588. Specifically, he noted Plaintiff's responses

11

to questions demonstrated "blatant malingering." For example, "when asked the name of the animal that says "meow," he identified a cow. R. 588. Dr. Brantley opined that the Plaintiff "is stable with prognosis being excellent for continued stability for the next 12 months." R. 589.

## VI. ISSUE

Whether the ALJ improperly rejected the opinion of treating physician, Prashanth Bhat, M.D., without good cause?

## VII. ANALYSIS

Eleventh Circuit law is settled that, "absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citations omitted). However, "good cause" to stray from the treating physician's opinion exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel*, 631 F.3d at 1179. If the ALJ does stray from the treating physician's opinion, he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440 (citations omitted). Moreover, an opinion about whether a plaintiff is disabled is not a medical opinion entitled to significant weight because that issue is dispositive of the case. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011).

The ALJ addressed the opinion of Dr. Bhat as follows:

Prashanth Bhat, B.D., treating physician, opined the claimant has up to moderate limitations with understanding and memory. He further opined the claimant has up to marked limitations with sustained concentration and

persistence, social interaction, and adaption. (12F). There is not support for this opinion in the medical record. As a preliminary matter, a therapist, nurse, and consultative examiner evaluated the claimant. None of these professionals suggested any limitations consistent with Dr. Bhat['s] assessment. Furthermore, Dr. Bhat is not a mental healthcare provider. He is the claimant's AIDS doctor. In addition, as discussed above, the claimant's subjective reports make clear that the claimant does not have a severe mental impairment. His Global Assessment of Functioning (GAF) scores were never below 65. The client's nurse also noted the claimant's focus on disability was "somewhat intense." Furthermore, the consultative examiner noted several times in his report that the claimant was malingering during the evaluation. Thus, no weight is afforded to this opinion.

R. 28.

The court has carefully conducted its own independent review of the record, paying specific attention to the medical records of Plaintiff's treating physician, Dr. Bhat (R. 570–74, 577–86, 591–608, 630–62 & 684–705), which are thoroughly summarized above. Based upon all of the evidence, including Dr. Bhat's records and other medical records, the court concludes that Dr. Bhat's opinion—which was expressed in a multiple-choice form (R. 664–66)—is not supported by his own treatment notes or the other medical evidence of record. *Winschel*, 631 F.3d at 1179. In the Eleventh Circuit, there is good cause to discount a treating physician's opinion where the doctor's findings are based on "subjective reports and he had no objective medical records on which to base his opinion." *Costigan v. Comm'r Soc. Sec. Admin.,* 603 F. App'x 783, 788 (11th Cir. 2015). This is such a case. Accordingly, the court concludes that the ALJ did not err in discounting Dr. Bhat's opinion regarding Plaintiff's disability.

## VIII. CONCLUSION

For these reasons, the court AFFIRMS the Commissioner's decision.

A final judgment will be entered separately.

DONE this 20th day of May, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE